**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| LARRY J. RAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  2:12cv158-WHA |
| | ) | |
| UNITED STATES OF AMERICA, | ) | (wo) |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. #21), filed by the United States of America on January 31, 2013.

The Plaintiff filed a Complaint in this court in February of 2012, bringing a claim of medical negligence pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b).[1]  The United States has moved for summary judgment as to that claim, and the Plaintiff has filed a brief in response.  The United States failed to file a timely reply to the Plaintiff's response.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

**II.  SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if there is no genuine issue as to any material fact and  . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[1] Rica Lewis-Payton was originally included as a Defendant, but a motion to dismiss her was granted and she was dismissed after the Plaintiff conceded the issue.

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B).  Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

## III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the nonmovant:

On August 4, 2010, the Plaintiff, Larry Ray ("Ray"), underwent surgery at the Birmingham Veterans Administration Medical Center ("BVAMC") to repair a torn quadriceps tendon in his left leg near the knee.  Ray was not prescribed anticoagulants after the procedure.

Three weeks after his surgery, a deep vein thrombosis was discovered by Ray's primary care physician, also a Veterans Administration doctor.  The primary care physician prescribed anticoagulants for a 1-2 week period.  Ray then developed a pulmonary embolism which required a vena cava filter in his chest, and management for the rest of his life.

Ray filed an administrative claim with the Department of Veterans Affairs ("VA") in November 2011.  The claim states as its basis that on August 4, 2010 at approximately 5:30 a.m. the VA staff at the BVAMC wrongfully failed to prescribe anticoagulation medicine following surgical repair of his left knee and that Ray requested that he be prescribed anticoagulants but the medical staff refused.  The claim was denied.

Ray filed suit and specified in his Complaint three breaches of the standard of care: "(a) failing to independently prescribe anticoagulants to Mr. Ray following his surgery on August 4, 2010, (b) failing to prescribe anticoagulants to Mr. Ray following the surgery on August 4, 2010 despite his requests for said medication, and (c) failing to have a certified physician monitor and oversee Mr. Ray's surgery on August 4, 2010."

## IV. DISCUSSION

The liability of the United States under the Federal Tort Claims Act ("FTCA") is

determined by reference to the law of the state in which the alleged negligence occurred.  28

U.S.C. §§ 1346(b); *Ochran v. U.S.*, 273 F.3d 1315, 1317 (11th Cir. 2001).  The parties agree that

this case is governed by Alabama statutes relating to medical liability.

Under Alabama law, to establish medical malpractice, expert testimony from a similarly

situated health care provider is generally necessary to illustrate (1) the appropriate standard of

care, (2) a deviation in this case from that standard of care, and (3) that the deviation proximately

caused the injury in this case. *Bozeman v. Orum,* 199 F. Supp. 2d 1216, 1235 (M.D. Ala. 2002)

(citing *Lyons v. Walker Reg'l Med. Ctr.*, 791 So.2d 973, 942 (Ala. 2000)).

The United States contends that Ray has identified no expert who will testify on his

behalf in this case, and that the United States has expert testimony from Michael O. Fidler, M.D.,

an orthopedic surgeon, that the standard of care was met in Ray's case.  (Doc. #21-4 at p.5).

Ray agrees that he has to have expert testimony to establish the elements of his claim,

and argues that he has presented such evidence from two medical doctors:  Dr. Paul H. Wright

and Dr. Sean Hatton.

Ray provides an affidavit in which Dr. Wright states from a review of the records that

they appear to show that the recommended treatment for Ray's deep vein thrombosis ("DVT") at

the time it was diagnosed was anticoagulants for 1-2 weeks, that the recognized anticoagulant

treatment for acute DVT is at least several months, and that the short-term treatment indicated in

the records was inadequate and a violation of the reasonable standard of medical care.  In brief,

Ray identifies Dr. Wright as an orthopedic surgeon, but he does not identify himself as such in

the body of his affidavit and his curriculum vitae is not attached to the affidavit filed with the

court.  So, it is not established by the evidence that Dr. Wright is a similarly situated health care

provider.  (Doc. #28-3).  Even assuming, without deciding, that Dr. Wright's affidavit can be considered by the court,[2] the affidavit is directed to a  claim which has not been pled in this case. That is, Dr. Wright's affidavit speaks to the standard of care governing the length of time for which anticoagulants are prescribed in treating diagnosed deep vein thrombosis, but the claim pled in the Complaint in this case,[3] and as stated in Ray's administrative claim,[4] is that there was a violation of the standard of care in the failure to prescribe any anticoagulants independently, or in response to Ray's request, after surgery on August 4, not a violation in failure to prescribe anticoagulants for an adequate period of time as treatment of deep vein thrombosis which was diagnosed three weeks later.   In other words, the claim as pled is that anticoagulants should have been prescribed prophylactically, not in treatment of a later condition.  Ray has pointed to no evidence of the standard of care that relates to his claim as pled, whereas the United States has presented expert medical evidence that the standard of care was met in not prescribing any anticoagulants prophylactically following Ray's August 4, 2010 surgery.  (Doc. #21-4 at p.5).

      Ray presents records from a second doctor, Dr. Sean Hatton, to establish causation in this

---

[2] Also, in its Motion for Summary Judgment, the United States represented that Ray had not tendered any expert report in this case despite several extensions between the parties of the deadline in the Uniform Scheduling Order (Doc. #22 at p.6).

[3] Ala. Code § 6-5-551 requires that "[t]he plaintiff shall include in the complaint . . . a detailed specification and factual description of each act and omission alleged by the Plaintiff to render the health care provider liable to the plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts."  A plaintiff may not amend the complaint through argument in a brief opposing summary judgment. *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir.2004). The deadline for amending the pleadings in this case was August 1, 2012.  (Doc. #18 at §4).

[4] "FTCA requires that *each* claim and *each* claimant meet the prerequisites for maintaining a suit against the government."  *Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir.2008) (emphasis in original).

case.  (Doc. #28-2).  Dr. Hatton was the Chief, Administrative Medicine, of the BVAMC who entered a medical opinion in relation to his Compensation and Pension Examination of Ray on May 31, 2011.  Ray argues that Dr. Hatton originally stated in this document, based on a review of the hospital records,  that Ray's pulmonary thromboembolism was caused by or a result of his surgery, but that Dr. Hatton has now changed his testimony because he is employed by the BVAMC.  (Dep. of Dr. Hatton, Doc. #21-7 at p.9:6-19)(stating that Dr. Hatton, as an internal medicine expert, would not have recommended anticoagulants be given prophylactically after the surgery because there would be more risks than benefits).  Dr. Hatton's report, as quoted by Ray in brief (Doc. #27 at p.3), does not establish the standard of care, but only speaks only to causation.  Saying that the DVT discovered three weeks after the surgery, which Dr. Wright's affidavit submitted by Ray opined was a new DVT, resulted from or was caused by the surgery is a far cry from saying that the prophylactic administration of anticoagulants following knee surgery was the standard of care and was breached.   The applicable law requires "a medical-malpractice plaintiff to produce expert medical testimony to establish the applicable standard of care in order to satisfy its burden of proof . . . ."  *Valentine v. Watters,* 896 So.2d 385, 392 (Ala. 2004), and this has not been done as to the acts alleged in the Complaint to constitute malpractice.  Therefore, summary judgment is due to be GRANTED as to Ray's claims in this case.

## V. CONCLUSION

For the reasons discussed, the Motion for Summary Judgment (Doc. #21) is ORDERED GRANTED.  A separate judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 11th day of March, 2013.

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE